**In re Robert JORDAN and Lena Jordan.**

**Equitable Life Assurance Company, Plaintiff,**

v.

**Union Planters Bank of Northeast Mississippi, National Association d/b/a Union Planters Bank of New Albany, Mississippi; and Lena Hoover Jordan, Defendants.**

Bankruptcy No. 91–12479.
Adversary No. 99–1146.

United States Bankruptcy Court,
N.D. Mississippi.

Jan. 18, 2000.

---

B. Sean Akins, James W. Pannell, Ripley, MS, for debtors.

Joseph C. Gibbs, Clarksdale, MS, Roger H. McMillin, Jr., New Albany, MS, for creditors.

*OPINION*

DAVID W. HOUSTON, III, Bankruptcy Judge.

This proceeding was initiated by the filing of a complaint by the plaintiff, Equitable Life Assurance Company (Equitable Life) against the defendants, Union Planters Bank of Northeast Mississippi, National Association d/b/a Union Planters Bank of New Albany, Mississippi (collectively Union Planters), and Lena Hoover Jordan; appropriate responsive pleadings having been filed by the defendants; and the court, having considered same, hereby finds, orders, and adjudicates as follows, to-wit:

## I.

The court has jurisdiction of the subject matter of and the parties to this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C § 157(b)(2)(A) and (B).

## II.

This proceeding was initially commenced in the United States District Court for the Northern District of Mississippi as a result of the filing of an interpleader complaint by Equitable Life. The complaint sets forth a factual chronology which, for the most part, is undisputed. Edited excerpts, which provide an informative backdrop for this proceeding, are set forth hereinbelow in paragraphs A–O:

A. On or about January 13, 1983, Equitable Life issued a policy of life insurance to Robert N. Jordan with a face amount of $25,000.00, the same being policy # 83–111–676. The named beneficiary of this policy of insurance is the defendant, Lena Hoover Jordan.

B. On or about, October 28, 1986, Equitable Life issued a policy of life insurance to Robert N. Jordan with a face amount of $50,000.00, the same being policy # 86–094–073. The named beneficiary of this policy of insurance is the defendant, Lena Hoover Jordan.

C. On or about January 23, 1988, Equitable Life issued a policy of life insurance to Robert N. Jordan with a face amount of $100,000.00, the same being policy # 88–006–408. The named beneficiary of this policy of insurance is the defendant, Lena Hoover Jordan.

D. On or about January 20, 1986, Robert N. Jordan executed an assignment of contract of insurance, # 83–111–676, to First National Bank of Ripley, Mississippi.

E. On or about March 7, 1989, Robert N. Jordan executed an assignment of contract of insurance, # 86–094–073, to First National Bank of Ripley, Mississippi.

F. On or about April 20, 1989, Robert N. Jordan executed an assignment of contract of insurance, # 88–006–408, to First National Bank of Ripley, Mississippi.

G. An involuntary petition was filed against Robert and Lena Jordan on July 24, 1991. The Jordans subsequently confessed the petition and an order for relief was entered on August 27, 1991. The Jordans were granted a discharge in bankruptcy on December 17, 1991, and the case was closed on March 9, 1992.

H. The defendant, Union Planters, purchased. the assets of the First National Bank of Ripley, Mississippi, including the assignments of Equitable Life insurance policies ## 83–111–676, 86–094–073, and 88–006–408.

I. Robert N. Jordan died on or about July 1, 1998.

J. On July 22, 1998, Lena Hoover Jordan filed with Equitable Life a claim for benefits under the policies of insurance issued to Robert N. Jordan.

K. Through correspondence, dated October 9, 1998, Union Planters stated that it was not asserting any assignment rights with regard to policy # 83–111–676. Union Planters, through counsel, stated that "[Union Planters Bank] makes no claim as assignee or otherwise to policy number 83–111–676...."

L. On or about November 3, 1998, Equitable Life paid benefits to Lena Hoover Jordan in the total amount of $32,491.98, under the terms of policy # 83–111–676, in light of Union Planters' statement that it made no claim against the proceeds of that policy.

M. On November 11, 1998, Union Planters filed with Equitable Life a claim for benefits under the policies of insurance issued to Robert N. Jordan, ## 83–111–676, 86–094–073, and 88–006–408. Union Planters filed a claim for benefits under policy # 83–111–676, even though it had already stated through counsel that it was not asserting any claim with regard to those proceeds. Since the filing of its claim for benefits under these policies, Union Planters has continued to assert assignment rights to the proceeds of all three policies.

N. As to policies # 83–111–676, 86–094–073, and 88–006–408, Equitable Life asserted that it has no claim on the amounts of these policies and relinquished any further claims to said funds. Equitable Life, however, was presented with two separate claims to these funds and also was presented with a claim by Union Planters to pay funds already disbursed to Lena Hoover Jordan.

O. Equitable Life tendered into the registry of this court the remainder of the benefits owed under life insurance policies ## 86–094–073 and 88–006–408, which total $61,070.29 and $115,603.20, respectively. Although not required to pay interest under the policies, interest was prepaid on these policy benefits to reflect interest earned as of January 15, 1999.

Following the payment of the balances of the aforementioned insurance policies, totaling approximately $176,673.49, into the registry of The district court, and following a settlement between Equitable Life and Union Planters, an order was entered dismissing Equitable Life from the cause of action. Thereafter, the proceeding was transferred to this bankruptcy court for an adjudication as to the entitlement to the interpleaded insurance proceeds between Union Planters and Mrs. Jordan.

### III.

To finance his sawmill business, Robert N. Jordan, during his lifetime, borrowed significant sums of money from First National Bank of Ripley, Mississippi, the predecessor in interest to the defendant, Union Planters. The loans were secured by the Jordans' homestead property, the sawmill property, sawmill equipment, accounts receivable, vehicles, and the assignment of the aforementioned three life insurance policies. In their bankruptcy schedules, Mr. and Mrs. Jordan indicated that they owed Union Planters the total sum of $358,544.85. After the liquidation of the collateral, excepting the life insurance policies, the debt was reduced to approximately $186,000.00 when the Jordans received their Chapter 7 discharge on December 17, 1991. At that time, Mr. Jordan had become disabled, and, in keeping with the terms of the policies, the accruing premiums were waived because of the disability. When the bankruptcy case was filed, the policies had cash surrender values totaling $14,046.43. However, the policies fully matured at the death of Mr. Jordan on July 1, 1998, long after the bankruptcy case had been closed.

As noted in the excerpts extracted from the complaint, Union Planters initially made no claim to the proceeds from policy

# 83–111–676, so Equitable Life paid Mrs. Jordan these proceeds in the total sum of $32,491.68. Subsequently, Union Planters located the assignment applicable to this policy and asserted a claim against Equitable Life, contending that the proceeds had been erroneously paid to Mrs. Jordan. This dispute was settled between Union Planters and Equitable Life before this proceeding was transferred to this court, and Equitable Life was dismissed as a necessary party. The funds interpleaded by Equitable Life did not include any proceeds from policy # 83–111–676.

Neither Mrs. Jordan nor Union Planters addressed the aforesaid issue in the stipulation of facts, submitted on September 24, 1999, and they did not argue about the distribution of the proceeds from policy # 83–111–676 in their respective legal memoranda. Consequently, insofar as Mrs. Jordan and Union Planters are concerned, this court concludes that any dispute over the distribution of the proceeds from policy # 83–111–676 has not been appropriately raised before this court, and is, therefore, not ripe for adjudication.

Following a status conference, Mrs. Jordan filed a motion to amend her exemptions in order to appropriately assert her claim to the interpleaded funds. The parties agreed that the resolution of this motion would be dispositive of the remaining issues existing in this adversary proceeding. They indicated that no formal discovery was necessary, and that the court could decide the remaining questions based on the submission of the agreed stipulation of facts, noted hereinabove, as well as, the submission of written memoranda. All of this was timely accomplished by the parties.

## IV.

■ The court first concludes that Mrs. Jordan has the right to amend her exemption claims. Since this bankruptcy case has now been reopened, this is clearly permitted by Rule 1009, Federal Rules of Bankruptcy Procedure. See also, *Matter of Williamson*, 804 F.2d 1355 (5th Cir. 1986).

■ The second question focuses on which version of the exemption statute, applicable to life insurance proceeds, should apply to this proceeding. The current version of § 85–3–11, Miss.Code Ann., which became effective on July 1, 1994, provides as follows:

(1) Except as provided in subsection (2), all proceeds of a life insurance policy including cash surrender and loan values, shall inure to the party or parties named as the beneficiaries thereof, free from all liability for the debts of the person whose life was insured, even though such person paid the premium thereon. In addition, all proceeds including cash surrender and loan values, of a policy of life insurance owned by or assigned to another, shall inure to the beneficiary or beneficiaries named therein, subject to terms of any assignment, free from all liability for the debts of the person whose life was insured.

(2) (a) The exemption authorized in subsection (1) shall not apply to that portion of the cash surrender value or loan value of any life insurance policy which exceeds the sum of Fifty thousand dollars ($50,000.00) as a result of premiums paid or premium deposits or other payments made within twelve months of issuance of a writ of seizure, attachment, garnishment or other process or the filing of a voluntary or involuntary bankruptcy proceeding under the U.S.Code.

(c) Notwithstanding any other provision to the contrary, a creditor possessing a valid assignment from the

policy owner may recover from either the cash surrender value or the proceeds of the life insurance policy the amount secured by the assignment with interest.

§ 85–3–11 Miss.Code Ann. (1972) (effective July 1, 1994).

If this version of the statute is applicable, paragraph (2)(c) would preclude Mrs. Jordan from claiming any policy proceeds as exempt which are subject to an assignment in favor of Union Planters.

The predecessor to the aforementioned statute read as follows:

The proceeds of a life insurance policy up to and including the sum of $50,000, including cash surrender and loan values, shall inure to the party or parties named as the beneficiaries thereof, free from all liability for the debts of the person whose life was insured, even though such person paid the premiums thereon. **In addition to the above exempted amounts,** all proceeds, including cash surrender and loan values, of the policy of life insurance owned by or assigned to another, shall inure to the beneficiary or beneficiaries named therein, subject to the terms of any Assignment, free from all liability for debts of the person whose life was insured. (Emphasis added)

§ 85–3–11 Miss.Code Ann. (1942) (effective March 17, 1966).

The predecessor version of the statute was in effect at the time that Mr. Jordan entered into the loan transactions with First National Bank of Ripley, at the time when the life insurance policies were assigned, and at the time that the Jordans initially filed their bankruptcy case. Consequently, it is the opinion of this court that the former version of the statute is applicable to this proceeding. This version allows the policy beneficiary to claim the first $50,000.00 of policy proceeds as ex-

empt even though the policy has been assigned to a creditor. The proceeds, exceeding the sum of $50,000.00 would be then subject to the assignment and payable to the creditor.

■ Since the applicable version of the statute has now been determined, the question remains as to whether Mrs. Jordan should be able to claim $50,000.00 as exempt proceeds in each of the insurance policies as opposed to being limited to a single $50,000.00 exemption. Although the statute is somewhat ambiguous, the court, drawing on Mississippi precedents, concludes that, under the factual circumstances of this case, Mrs. Jordan should be entitled to one $50,000.00 exemption claim as opposed to cumulative claims in each of the policies. A contrary conclusion would inflict a significantly inequitable result on Union Planters. See, *Cozine v. Grimes,* 76 Miss. 294, 24 So. 197 (1898), *Equitable Life Assurance Society v. Hartfield,* 87 Miss. 548, 40 So. 21 (1906), *Dreyfus v. Barton,* 98 Miss. 758, 54 So. 254 (1911), and *Bonds v. Bonds,* 409 So.2d 704 (Miss.1982). Coincidently, counsel for Mrs. Jordan concurs with this conclusion. In a supplemental memorandum submitted to the court, he stated, "I agree with Mr. Creekmore (counsel for Union Planters) in his letter brief. The case of *Cozine v. Grimes,* 76 Miss. 294, 24 So. 197 (1898) stands for the proposition that a debtor may claim multiple life insurance policies as exempt so long as the cumulative total of the exemption does not exceed $50,000.00 as applied to the 1991 statute."

■ In the same supplemental memorandum, counsel for Mrs. Jordan also asserted that only the cash surrender values of the insurance policies should be considered as assets of the bankruptcy estate for purposes of Mrs. Jordan's exemption claims. He contends that the balance of

the proceeds, after deducting the cash surrender values, should be payable to Mrs. Jordan. As noted earlier, the cash surrender values of the policies at the time of the filing of the Jordans' bankruptcy petition totaled $14,046.43. In support of this position, counsel cites the U.S. Supreme Court decision, *Everett v. Judson,* 228 U.S. 474, 33 S.Ct. 568, 57 L.Ed. 927 (1913). In that case, the debtor was the owner of three life insurance policies that had nominal cash surrender values totaling $63.80. When the debtor committed suicide shortly after the bankruptcy case was filed, a dispute arose between the bankruptcy trustee and the executor of the debtor's will. The court concluded that the bankruptcy trustee was entitled only to the total of the cash surrender values existing on the date of the bankruptcy filing. Significantly, the balances of three loans, which encumbered the three policies, were deducted prior to the calculation of the cash surrender values. The executor received the face amount of the policies less the deductions for the loan amounts and less the deductions for the cash surrender values.

Mrs. Jordan's reliance on *Everett v. Judson, Id.,* is misplaced. She ignores the fact that the value of the three loans, which encumbered the policies, were deducted from the policy proceeds before any distributions were made. This is equivalent, in the case currently before this court, to ignoring the policy assignments to Union Planters. As the designated beneficiary under the insurance policies, Mrs. Jordan does not stand in the "same shoes" as the Chapter 7 bankruptcy trustee who made no claim for the cash surrender values of the policies. (Parenthetically, *at that time,* the trustee had no motivation to assert a claim to the cash surrender values for the benefit of the bankruptcy estate. The policies were either subject to the assignments, or the beneficiary could assert an exemption claim to the cash surrender values.) Since the policies have now fully matured following the death of Mr. Jordan, Mrs. Jordan, as the beneficiary, can not claim an exemption in the cash surrender values, only the matured policy proceeds. She certainly cannot claim an exemption in both. Even if the cash surrender values were captured in the bankruptcy estate, the matured proceeds of the policies would still be subject to the claim of Union Planters pursuant to the assignments, subject to Mrs. Jordan's $50,000.00 exemption claim.

## V.

Based on the foregoing analysis, the court concludes as follows:

1. The motion to amend exemptions, filed by the defendant, Mrs. Lena Hoover Jordan, is sustained.

2. The version of § 85-3-11, Miss.Code Ann., that was in effect prior to its being amended in 1994, is applicable to this proceeding. As such, Mrs. Jordan is entitled to an exemption claim in the insurance proceeds interpleaded into the registry of this court, not exceeding $50,000.00, plus interest accruing on said sum since the date of interpleader. She also is entitled to a pro-rata share of the interest paid by Equitable Life prior to the funds being interpleaded that would have accrued on the sum of $50,000.00 as of January 15, 1999. This sum must be calculated or ascertained by the parties. (See paragraph II. O. herein.)

3. The assignments of the insurance policies now held by Union Planters apply to the policy proceeds exceeding Mrs. Jordan's exemption claim of $50,000.00, plus the interest amounts as noted hereinabove. As such, Union Planters is entitled to

receive the balance of the funds interpleaded into court, plus interest accruing on that amount since the date of interpleader.

4. Each party shall bear their respective costs.

A final judgment shall be entered contemporaneously herewith.